State, ex rel. Gilbert, v. Dilley.

---

STATE, EX REL. JOHN W. GILBERT ET AL., APPELLANTS, V. CHARLES DILLEY ET AL., APPELLEES.

FILED MARCH 13, 1914.  No. 17,664.

1. Constitutional Law: SCHOOLHOUSES: USE FOR RELIGIOUS PURPOSES. Holding Sunday school or religious meetings in a country schoolhouse so infrequently as not to exceed four times a year, and which do not interfere with the school work, does not constitute the schoolhouse a place of worship, within the meaning of section 4, art. I, of the constitution.

2. Mandamus: SCHOOLHOUSES: USE FOR RELIGIOUS PURPOSES. The courts will not compel the school district board, by mandamus, to close the schoolhouse for the purpose of excluding such meetings, at the instance of a taxpayer who is not required to contribute anything whatever to the support of such meetings or the repair of the schoolhouse in which they are held.

APPEAL from the district court for Saline county: LESLIE G. HURD, JUDGE. *Affirmed.*

*George H. Hastings* and *James E. Addie,* for appellants.

*Aldrich & Fuller* and *R. M. Proudfit, contra.*

BARNES, J.

On the 18th day of August, 1911, John W. Gilbert and John M. Simmons filed their petition in the district court for Saline county, praying for a writ of mandamus to compel the school district board of district No. 13, of that county, composed of Charles Dilley, director, John Barney, moderator, and August Barney, treasurer, to keep the schoolhouse in that district closed to the public as a place of worship on the first day of the week, commonly called Sunday, and on other days. Relators moved the court to grant them an alternative writ of mandamus, as prayed for in their petition. The grounds on which the writ was sought were that the respondents had converted the schoolhouse into a place of worship, and had compelled the relators to support a place of worship against their consent, and contrary to the provisions of section 4, art. I of the constitution, which provides: "All persons have a natural and indefeasible right to worship Almighty God according to the dictates of their own consciences. No person shall be compelled to attend, erect or support any place of worship against his consent, and no preference shall be given by law to any religious society, nor shall any interference with the rights of conscience be permitted."

An alternative writ was allowed, and respondents by their return admitted that on infrequent occasions they had permitted the public to use the schoolhouse for religious meetings, and that relators had demanded that they discontinue such use. Respondents alleged that John W. Gilbert was not a resident of said school district, but was only a taxpayer therein; that when the schoolhouse was built it was agreed that it might be occasionally used for holding religious meetings; they also alleged that during the past five years not more than five meetings of that kind had been held in the schoolhouse in any one year; that no meetings of that kind had been held in said schoolhouse at night, or on any days except Sundays, during

the incumbency of the present board. Respondents denied that such infrequent meetings have resulted in any damage to the schoolhouse; and alleged that the expense of whatsoever meetings have been held has been borne by those participating in such meetings, and that the schoolhouse has been kept in better repair by reason thereof than it otherwise would have been kept. Respondents also denied that by the holding of such infrequent meetings they had converted the schoolhouse into a place of worship, within the meaning of the constitution. They denied that the meetings were of a sectarian nature, and especially denied that the relators had been compelled to contribute, or had ever contributed, anything of value whatsoever to the purpose of maintaining the schoolhouse as a place of worship. Respondents prayed that the alternative writ be quashed; that a peremptory writ be denied; and that the petition be dismissed at the relator's costs. Upon the issues thus presented, the cause was tried to the court, without a jury; the findings and judgment were for the respondents; and the relators have appealed.

The first question presented for our determination is: Have the respondents, by their acts, converted or permitted the schoolhouse to be converted into a place of worship? The evidence discloses that for the five years last past there have been held in the schoolhouse, in said district, Sunday school and religious meetings not more than four times each year; that such meetings have been held only on Sundays, and have in no way interfered with the scholars in the school work in said district; that relators have not attended nor been compelled to attend those meetings. And respondents contend that the meetings have not interfered with the rights of the relators, and were not of sufficient frequency to make the schoolhouse a place of worship.

Section 3, art. I of the constitution of the state of Iowa, provides: "The general assembly shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof; nor shall any person be compelled

95 Neb. 34

to pay tithes, taxes, or other rates for building or repairing places of worship, or the maintenance of any minister or ministry." *Davis v. Boget*, 50 Ia. 11, was a case where it was sought by mandamus to compel the respondents to permit the use of the schoolhouse occasionally for religious worship. It was there said: "We may further say that the use for the purposes named is but temporary, occasional, and liable at any time to be denied by the district electors, and such occasional use does not convert the schoolhouse into a building for worship, within the meaning of the constitution." In *Townsend v. Hagan*, 35 Ia. 194, it was sought to restrain the directors of the school district by injunction from permitting the use of the schoolhouse for occasional religious meetings. It appeared in that case, as it does in this one, that the voters had settled the question at a regular school district meeting, and it was there said: "We have seen that the statute confers the power on the electors of the district when legally assembled to make such disposition of the schoolhouses as they may deem right and proper. They may permit any reasonable and proper use of them which, in their discretion, may be determined upon. That the use in the present case is reasonable clearly appears from the facts agreed upon, and that it is proper, ought not to be questioned in a Christian state. Whether a court of equity will enjoin an abuse of the discretion vested in the people of a school district, we do not, as we need not, determine. In this case we hold that there has been no abuse of discretion whatever."

In *Nichols v. School Directors*, 34 Am. Rep. 160 (93 Ill. 61), it was said: "A statute authorizing school directors to grant the temporary use of public schoolhouses, when not occupied by schools, for religious, literary and other meetings, and for evening and Sunday schools, is not unconstitutional." To the same effect is *Scofield v. Eighth School District*, 27 Conn. *499.

As we view the record, relators have failed to show that the respondents have converted or permitted the schoolhouse in question to be converted into a place of worship,

within the meaning of the constitutional provisions above quoted.

The next question for our determination is whether the relators have been compelled to attend, erect or support any place of worship against their consent. On that question the relator Gilbert testified that he did not live in the district, but paid about one-sixth of the taxes collected therein; that he could not tell how much additional tax he had been compelled to pay by reason of the religious meetings in question; that he had never figured it up; and he was unable to testify as to any items of expense due to those meetings; and he could not designate any particular item of expense occasioned thereby. The testimony of the relator John Simmons was to the same effect. In fact, the relators failed to show that they had been compelled to pay any sum whatever for the support of the meetings in question, or for the repair of the schoolhouse occasioned by such meetings. In fact, they failed to bring themselves within the inhibition of the constitutional provisions above quoted. If the relators had shown that the schoolhouse had been used for religious meetings to such an extent as to make it a place of worship, or that they had been compelled to pay anything for the erection, the support, or the repairs of the building for that purpose, we might hold that they were entitled to the relief prayed for. But, failing to make such proof, it seems clear that the judgment of the district court was right, and is

AFFIRMED.

HAMER, J., concurring.

It must be conceded that any use of the schoolhouse which prevents it from being used for school purposes is clearly objectionable. In this case religious meetings were had occasionally, but whether to such an extent as to establish the character of the building as a place of worship may well be doubted. I do not think so. If the school officers should see fit to use the building for the purpose of hearing a lecture on geography, illustrated by maps and charts, there probably could be no good objec-

tion. If the lecture should be upon astronomy or any kindred educational subject there could not well be any serious objection. So of science and philosophy, law and literature. It is the opinion of the writer that to impart knowledge concerning religion and religious subjects is educational to the extent that our civilization covers and includes those subjects. I am unable to see that religion is so far removed from the general purposes of a school as not to be tolerated in a moderate degree. Religion is a part of our civilization. It is therefore, of necessity, part of our education. An intelligent discussion of religion and its kindred subjects approximates as nearly to the ordinary use of a schoolhouse as its use for the purpose of receiving a lecture on geography, philosophy, history, or agriculture. Chaplains at the legislature or at the penitentiary do not interfere with legislation or reform. The discussion of religion and its relation to our civilization ought to be educational and beneficial. The occasional use of the schoolhouse for such a purpose ought not to be denied.