THE STATE, EX REL. GREISINGER ET AL., APPELLANTS, *v.* GRAND RAPIDS BOARD OF EDUCATION ET AL., APPELLEES.

(No. 746—Decided December 5, 1949.)

*Mr. Hayden C. Covington,* for appellants.

*Mr. Floyd A. Coller,* prosecuting attorney, and *Messrs. Bowman, Hanna & Middleton,* for appellees.

Conn, J. The relators, hereinafter referred to as appellants, brought an action in the Court of Common Pleas against the respondents, appellees herein, seeking a writ of mandamus commanding the respondents to allow Jehovah's Witnesses to use the auditorium in the school building of the Grand Rapids Local School District. After an exhaustive hearing, the trial court refused to issue the writ and entered judgment accordingly. From that judgment, appellants appeal on questions of law.

The petition filed by appellants is verbose, redundant and argumentative, and could hardly be said to conform with the statute (Section 11305, General Code) as being "a statement of facts constituting a cause of action in ordinary and concise language." We state only the averments which we consider material.

Formal parts omitted, appellants aver that they made several applications for permission to use the school auditorium of the Grand Rapids Local School District for the purpose of holding public meetings where lectures were to be given concerning the Bible and the purposes of Almighty God; that the lectures would be free, nonexclusive, open to the public for educational purposes and for the welfare of the community; that appellants informed appellees they, appellants, would pay the expenses incurred, protect the property and comply with any other condition precedent to the use of the auditorium; that the applications for the use of the auditorium were for Sundays when the use would not conflict with the necessary use of such property; and, that appellants were unable to obtain any other suitable place in the village of Grand Rapids to hold such meetings.

Appellants aver further that it was the ministerial duty of the appellees to permit the requested use of the school auditorium; that the requests were illegally denied and appellants were thereby deprived of their legal rights of freedom of speech, freedom of assembly and freedom of worship, contrary to the Constitution of the United States and the Constitution of Ohio; that appellants were discriminated against; that they desired to hold public meetings in the school auditorium from time to time and at all times in the future; that the requested use of the auditorium is mandatory; and that appellants have no other complete remedy to redress the deprivation of their rights secured by the Constitution and the laws.

The answer of appellees denies each and every material averment in the petition, and avers that appellants had at no time made a demand or request for use of the school auditorium in accordance with the statutes; that a vast majority of the citizens of the school district demanded that the request be denied; and that the use of the school property by appellants was objected to by the taxpayers of the school district, as such use would compel the taxpayers of the village to support a place of worship in violation of the statutes and contrary to the regulations of the school board.

The answer avers further that the action is barred on the ground of laches; that mandamus is not a proper remedy; that appellants are not citizens, residents or taxpayers of the school district; and that there are other suitable places available for such meetings in the village of Grand Rapids.

Appellees ask that the petition be dismissed.

Appellants filed no reply to the answer of the appellees.

In the judgment entry of the trial court, the appel-

lants were denied a writ of mandamus. There were no special findings of fact and conclusions of law requested or made. However, the trial court prepared a comprehensive memorandum of the case, and its findings and judgment, from which we quote the following:

"Coming now to determine from the facts whether the board has abused its discretion in refusing the use of the auditorium the board found the relators were not a responsible organization, and responsibility means more than mere financial responsibility; that the Jehovah Witnesses refuse to do military service; that they do not vote; that they do not do jury service; that their teachings are against the principles and teachings taught and practiced in the schools of Grand Rapids; that they are opposed to other religions, calling them rackets and the ministers racketeers; that the purpose of the meetings of Jehovah Witnesses are for missionary and propaganda purposes and teaching their particular beliefs; that no members of relators are residents or taxpayers in the Grand Rapids School District; that they are seeking to inject themselves into a community where ninety-nine percent of the people are opposed to them; that their meetings will stir up strife among the various religious denominations and disrupt and upset the school system and the community in general."

The errors assigned are that the judgment of the trial court should have been in favor of the appellants; that it is contrary to law and not sustained by any evidence; and that the court erred in admitting incompetent evidence.

Many controverted matters of fact and law have been presented in this court in oral argument and by brief, and the discussion has occupied a wide field. The focal point in the controversy, however, centers

on the question whether the board of education had any discretion under the statutes defining its duties and, if so, whether there has been shown any abuse of discretion in the instant case. Many of the questions discussed in the exhaustive briefs are collateral to these central issues upon the determination of which these collateral questions may become secondary or be dissolved.

It is either admitted, or the evidence tends to show, that the appellants desire to use the school auditorium for religious purposes from time to time and at all time in the future; that other suitable places in the village of Grand Rapids are available for use by appellants; that the appellants are not citizens or taxpayers of the district; that no active members of Jehovah Witnesses live therein; that they actively indulged in unseemly attacks on other religions and further, that some of the doctrines expounded by the appellants are inimical to the responsibilities of citizenship and not in harmony with the school's program of education in character building, in the development of unprejudiced social attitudes and in the preparation of the boys and girls for intelligent and responsible citizenship.

Mandamus is defined by Section 12283, General Code, as "a writ issued, in the name of the state, to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station."

The plain language of the statute limits its application to those cases where a duty is explicitly and definitely enjoined. It follows "that the lawful discretion vested in an individual, officer, or corporation, cannot be destroyed, controlled, or limited by the writ of mandamus." 25 Ohio Jurisprudence, 1003, Section 28, and cases cited.

It is the settled law of this state that the discretionary power of a board of education can not be circumscribed by the courts where the exercise of such power is reasonable, in good faith and not clearly shown to be an abuse of discretion. We cite a few cases wherein this rule is recognized, as follows: *State, ex rel. Milhoof,* v. *Board of Education of Barberton,* 76 Ohio St., 297, 81 N. E., 568; *Board of Education of Sycamore* v. *State, ex rel. Wickham,* 80 Ohio St., 133, 88 N. E., 412; *Brannon* v. *Board of Education of Tiro Consolidated School Dist., Crawford Co.,* 99 Ohio St., 369, 124 N. E., 235; *State, ex rel. Wilms,* v. *Blake et al., Industrial Commission,* 144 Ohio St., 619, 60 N. E. (2d), 308; *State, ex rel. Van Harlingen,* v. *Board of Education of Mad River Twp. Rural School Dist.,* 104 Ohio St., 360, 136 N. E., 196; *State, ex rel. Methodist Children's Home Assn. of Worthington,* v. *Board of Education of Worthington Village School Dist.,* 105 Ohio St., 438, 138 N. E., 865; *State, ex rel. Dworken,* v. *Court of Common Pleas of Cuyahoga County,* 131 Ohio St., 23, 1 N. E. (2d), 138; *Greco* v. *Roper et al., Board of Education,* 145 Ohio St., 243, 61 N. E. (2d), 307; *State, ex rel. Tarpy,* v. *Board of Education of Washington Court House,* 151 Ohio St., 81, 84 N. E. (2d), 276.

The pertinent provisions of the statutes found in the Ohio School Code which became effective September 16, 1943, are Sections 4839, 4839-1 and 4839-2, General Code. These provisions of the Code define the authority of the board in respect to the use of school houses, the use of school grounds and buildings as social centers, and under what conditions and for what purposes school buildings and grounds may be used. As these statutes relate to the same subject matter and are incorporated into one act, they are *in pari materia* and must be construed together.

Section 4839, General Code, provides:

"The board of education of a city, exempted village or local school district, in its discretion, may authorize the opening of such schoolhouses for any lawful purposes. But nothing herein shall authorize a board of education to rent or lease a schoolhouse when such rental or lease in any wise interferes with the public schools in such district, or for any purpose other than is authorized by law."

The pertinent provisions of Section 4839-1, General Code, are:

"Upon application of any responsible organization, or of a group of at least seven citizens, all school grounds and school houses * * * shall be available for use as social centers for the entertainment and education of the people, including the adult and youthful population, and for the discussion of all topics tending to the development of personal character and of civic welfare, and for religious exercises."

Section 4839-2, General Code, provides:

"The board * * * shall, upon request and the payment of a reasonable fee * * * permit the use of any school house and rooms therein * * * when not in actual use for school purposes, for any of the following purposes:

"* * *

"2. For holding educational, religious, civic, social or recreational meetings and entertainments, and for such other purposes as may make for the welfare of the community."

Do these sections of the Code authorize the exercise of discretionary powers, and if they do, has the board of education in the instant case acted within the limits of sound discretion?

The language employed in these sections evinces a clear intention on the part of the Legislature to grant to a board of education discretionary power. We call

attention to the several statutory provisions and particularly such phrases as "in its discretion, may authorize," "for any lawful purposes," "in any wise interferes with the public schools," "any responsible organization," "tending to the development of personal character," "civic welfare," "religious exercises," "shall prescribe such rules and regulations," "shall * * * permit the use of any schoolhouse and rooms therein," "for * * * religious * * * meetings" and "as may make for the welfare of the community."

The claim of appellants that the authority of the board and the exercise of powers which the law has vested in it are ministerial only, and not discretionary, appears to be clearly untenable. The purposes and intent of the Legislature to confer on the board discretionary power could hardly be expressed with greater clarity or in a more appropriate area of our free society.

Has the board of education, in the instant case, exercised a sound discretion in its refusal to give appellants a permit to use the school auditorium for religious exercises and religious meetings?

At the threshold of this issue it appears that there is no evidence of any formal application on the part of any organization for the use of the school building. The applications in the instant case were made orally and in writing by individuals in varying groups and at different times.

The statute contains the following clause: "Upon application * * * of a group of at least seven citizens." The word "group" is significant. It imports a number of persons acting at one and the same time for a common purpose. The group may make formal written application or the application may be oral, but a group of at least seven must make the application to the board before such application may receive favorable action.

There is a further qualification. The group must be citizens and there is a strong implication that the persons composing the group should be citizens of the community in which the school building is located, even though the board might waive the statutory requirements as to the appellants. Although these six persons making the several applications could qualify as citizens of some other community or of the state of Ohio, the record shows that they came into the community of Grand Rapids as "invaders" from the outside, not as "citizens, residents or taxpayers." Being strangers, it became the duty of the board of education, in considering the applications, to inquire into their credentials in order to exercise the discretion conferred upon it by law, and to determine whether the applications were duly made and whether the applicants' use of the building would in any wise interfere with the objects and purposes of the public schools or prejudice the "welfare of the community" of Grand Rapids.

However, it is contended that the appellants represent the entire congregation of the East Unit of Jehovah's Witnesses of Toledo. On the basis of this claim, the board was not dealing with a group of citizens but with a voluntary, unincorporated organization. The statute provides it must be a "responsible organization." While it is argued that the statute implies a financial responsibility or an organization having good credit or financial standing, it does not appear that the Legislature so intended. If that had been the intention of the Legislature, it would have so modified the word "responsible." "Responsible" connotes a meaning "involving accountability," "having a mental or moral capacity for knowing right from wrong, in virtue of which one may be held accountable for his acts," "capable of rational thought

or action," in addition to ability "to discharge .obligations or pay debts." (New Century Dictionary.)

The written application purporting to be on behalf of the east unit of the Toledo organization was signed by two individuals and not in form to be binding on the organization, even if it had a legal existence. It was the duty and responsibility of the board to ascertain whether the organization represented by applicants came within the statutory meaning of a "responsible organization."

The statute expressly negatives the authority of the board to permit any use of the building that "in any wise interferes with the public schools." The statute provides also that the school grounds and school house may be available as social centers for entertainment and education "and for the discussion of all topics tending to the development of personal character and of civic welfare, and for religious exercises * * * as may make for the welfare of the community." These provisions of the statute required the board to exercise its best judgment and discretion in granting or refusing to grant the applications, if they were made on behalf of the organization.

It is averred in the answer of respondents that a vast majority of the citizens, residents and taxpayers of the school district, and also many civic organizations, have requested the board not to permit the use of the school auditorium by appellants. These averments are not denied. Over the objection of appellants, evidence was introduced by way of written petitions addressed to the board and resolutions adopted by various civic organizations in the village of Grand Rapids. In the performance of their duties, the members of the board had a right to be informed and to inform themselves of the attitude of the residents and taxpayers of the school district. Having this right,

the board of education could properly take cognizance of such petitions and resolutions and was required to do so, having regard for the ''welfare of the community'' in relation to the use of school property.

No bad faith on the part of the board having been shown in the method employed to ascertain the attitude of the citizens of the school district, it was within the discretion of the trial court to receive this evidence and appellants were not prejudiced by its admission.

It appears that the statutes confer discretionary power on the board of education. In the enactment of these statutes, the Legislature acted within the reserve power of the state, as the reasonable exercise of this power in the control and use of school property sustains a direct and eventual relationship to the lawful purposes for which school property may be employed in ''the development of personal character,'' and in promoting ''the welfare of the community.''

Appellants broadly contend that by reason of the refusal of their request by the board of education, they were denied their legal rights of freedom of speech, freedom of assembly and freedom of worship, contrary to the Constitution of the United States and the Constitution of Ohio.

As already pointed out, the statutes give the board of education broad discretionary power. The plenary power thus granted, and the action taken by the respondent, must be deemed valid, unless it is clearly prohibited by the Constitution. See 8 Ohio Jurisprudence, 161, Section 63; 8 Ohio Jurisprudence, 251, Section 147; *State, ex rel. Weaver, v. Board of Trustees of Ohio State University,* 126 Ohio St., 290, 295, 185 N. E., 196; and *State, ex rel. Wilms, v. Blake et al., Industrial Commission, supra.*

It does not appear in the instant case that the pro-

visions of the statutes under review unreasonably interfere with any constitutional right of appellants or that the authority conferred by such statutes on the board of education is incompatible with the state or federal Constitution.

On the record before us,.it is our opinion that the board of education exercised a sound discretion under authority of. law in refusing to grant appellants the right to use the school property, and that the finding and judgment of the trial court should be affirmed.

*Judgment affirmed.*

CARPENTER and FESS, JJ., concur.