Dale HUNT and Gale Hunt, by next friend, their parent, Mrs. Levi Hunt, Barbara Williams, by next friend, her parent, Mrs. Harvey Williams, Donna Stewart, by next friend, her parent, Mr. Carl Stewart, Jackie Blake, by next friend, her parent, Mrs. L. A. Blake, Eddie Long, by next friend, his parent, Mr. William Long, Plaintiffs,

v.

The BOARD OF EDUCATION OF the COUNTY OF KANAWHA, Albert Anson, Jr., President, in his official capacity, the Department of Education of the State of West Virginia, Daniel B. Taylor, Superintendent, in his official capacity, Defendants.

Civ. A. No. 70-225.

United States District Court,
S. D. West Virginia,
Charleston Division.

Jan. 18, 1971.

John L. Boettner, Jr., Charleston, W. Va. (Appalachian Research and Defense Fund, Inc.), for plaintiffs.

John O. Kizer, Campbell, Love, Woodroe & Kizer, Charleston, W. Va., for defendants.

## MEMORANDUM ORDER

JOHN A. FIELD, Jr., Chief Judge.

This action was instituted by six students of Herbert Hoover High School in Kanawha County seeking to enjoin and restrain the defendants from prohibiting the plaintiffs to meet voluntarily on the premises of the school for the purpose of engaging in group prayer and for a declaratory judgment that these acts of the defendants violate the rights of the plaintiffs under the first and 14th amendments to the Constitution of the United States. The plaintiffs also moved for a preliminary injunction to enjoin the defendants from interference with the said activities of the plaintiffs, and a hearing was held and evidence taken relative to this motion on November 16, 1970. On December 1, 1970, an order was entered denying the motion of the plaintiffs for the preliminary injunction. The defendant, Daniel B. Taylor, Superintendent of the Department of Education of the State of West Virginia, has filed a motion for summary judgment and his affidavit in support thereof. The other defendants, the Board of Education of the County of Kanawha, and Albert Anson, Jr., President of the Board, filed an answer to

the complaint and also a motion to dismiss the action upon a multiplicity of grounds, including the ground that the complaint fails to state a claim against these defendants upon which relief can be granted. It appears to me to be appropriate in the interests of justice, in passing upon the dismissal motion, to consider not only the pleadings, but the affidavit of Walter F. Snyder, Superintendent of Kanawha County Schools, as well as the evidence presented at the hearing on the motion for a temporary injunction, and accordingly the motion to dismiss will be treated as one for summary judgment and disposed of as provided in Rule 56 of the Federal Rules of Civil Procedure. Upon the pleadings, the affidavits and the evidence presented with respect to the motion for the temporary injunction, I am satisfied that there is no genuine issue as to any material or operative fact and that accordingly summary disposition is appropriate.

The undisputed facts are as follows. The plaintiffs are citizens of the United States and residents of the town of Elkview, Kanawha County, West Virginia, and are regularly enrolled as students at Herbert Hoover High School in said County. The Board of Education of the County of Kanawha is a corporation under the laws of the State of West Virginia and is charged with the administration of the public schools of Kanawha County, and Albert Anson, Jr., is a member of the Board of Education and is president of the Board. During or prior to the year 1956, the Board of Education prepared and adopted a Manual of Administration, copies of which Manual were delivered to all supervisory and administrative personnel of the school system for their guidance in following the approved policies and procedures for the administration of the public schools in Kanawha County.

Included in the Manual are the following sections which were duly approved and adopted by the Board and have been at all times pertinent to this litigation in full force and effect.

Section 11.212—"Requests for the use of school buildings for religious purposes shall not be granted. However, baccalaureate services may be held provided the major purpose of such baccalaureate service is teaching and stressing moral and ethical values and is not religious."

Section 2.117—"School Conduct and Discipline

" * * * No student shall be in a school building without the supervision of a teacher."

Section 2.1117—"Pupils at School Before and After Hours

"When the weather and the condition of the school grounds are favorable, it is usually better from a health standpoint for children to be out-of-doors than in the school building.

"Ordinarily, parents should start their children at a time which will enable them to reach the school building sometime between the accepted time of admission into the school and the tardy bell.

"The main entrance of the school building normally should be unlocked thirty (30) minutes before the first bell and kept unlocked during the day. Doors will be unlocked to accommodate students arriving on the earliest school bus. Both parents and children should understand that, when the weather is unfavorable, children are not barred from entering the school building. *Students are not to be left in the building unsupervised.*" (Emphasis added.)

On or before September 19, 1970, the plaintiffs began to meet on the premises of Herbert Hoover High School prior to the beginning of the schoolday for the purpose of offering group prayers. These meetings were initiated without the knowledge or permission of the faculty and the principal of the High School, and were not sponsored or supervised by any member of the faculty of the School. On or before October 1, 1970, the principal of Herbert Hoover High School was apprised of the activi-

ties of the students and thereupon advised the plaintiffs that these prayer sessions were in violation of the policy of the Board of Education and were prohibited. The principal stated to the students that such sessions were in violation of the "Supreme Court decisions." As a result of this action on the part of the principal, the plaintiffs have been denied access to any of the classrooms or other premises of the High School for the purpose of conducting their prayer sessions. The prayer sessions were conducted by the group without regard to religious denomination and were open to members of all religious faiths. Upon at least two or three occasions, Eric Koontz, Pastor of the Elkview Baptist Church, met with the group and participated in the prayer sessions.

Upon these facts, the plaintiffs contend that the action of the school authorities violates their first amendment guarantee of the free exercise of religion, speech and expression, as well as the 14th amendment guarantee of equal protection and nondiscriminatory treatment in the exercise of their Federal constitutional rights.

Counsel for the plaintiffs suggests that the disposition of this case requires that I delineate the religious activities, if any, which might properly be countenanced by the Board of Education in the light of the Supreme Court decisions in School District of Abington Twp., Pa. v. Schempp, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963), and Engel v. Vitale, 370 U.S. 421, 82 S.Ct. 1261, 8 L. Ed.2d 601 (1962). However, such a judicial excursion is unnecessary since the decisions in both *Abington* and *Engel* involved an appraisal of the affirmative or permissive posture of the school authorities in the light of the Establishment Clause of the First Amendment. The present case, on the other hand, presents only two questions; first, whether the Board of Education had the authority to prohibit the use of school facilities for any religious purpose, and second, whether such prohibition is constitutionally permissible. It is my conclusion that both of these questions must be answered in the affirmative.

It is well settled in West Virginia that a county board of education is a corporation created by the Legislature and, as such, has only such powers as are expressly conferred upon it by statute or that fairly arise by necessary implication to execute such express statutory powers. See State ex rel. Town of South Charleston v. Partlow, 133 W.Va. 139, 55 S.E.2d 401 (1949); Herald v. Board of Education, 65 W.Va. 765, 65 S.E. 102 (1909). The only statute relative to the use of school property for purposes other than those of a basic educational nature is Section 19, Article 5, Chapter 18 of the Code of West Virginia, 1931, as amended. This section provides:

> "The board of education of any district or independent district shall have authority also to provide for free, comfortable and convenient use of any school property to promote and facilitate frequent meetings and associations of the people for discussion, study, recreation and other community activities, and may secure, assemble and house material for use in the study of farm, home and community problems, and may provide facilities for the dissemination of information useful on the farm, in the home, or in the community."

A reading of this statute clearly indicates that the Legislature did not see fit to grant specific authority to boards of education to permit the use of school facilities for religious meetings. This omission of any such authority in the present statute is particularly significant when it is examined in the light of prior legislation on this subject as reflected in Section 62, Chapter 45 of the Barnes Code of 1916, which provided as follows:

> "The trustees may allow the schoolhouse in their charge to be used for holding religious, political, or literary meetings and Sunday school and such other meetings as may be considered

beneficial to the public generally, under such regulations for the care and cleaning thereof as they may prescribe; provided, that such meetings shall not interfere with public schools."

Under this earlier statute, the Legislature specifically granted the school authorities the right to permit the use of school facilities for religious meetings, including Sunday school activities. However, as heretofore pointed out, the present statutory section which was first incorporated into the general law of this State by the Acts of the Legislature in 1919, deleted this specific authority for religious activities and extended to the boards of education only the authority to permit the use of school property for meetings or activities of a secular nature. In the light of this legislative development, I would seriously question whether the Board of Education presently has any authority whatever to permit the use of its school facilities for the conduct of any meeting or assembly of a religious nature, and, in any event, it is clear that the Board in the exercise of its administrative discretion has the right to prohibit the use of its school facilities for all religious activities.

■ Having concluded that the action of the Board of Education in proscribing the use of the school building for religious purposes comported with the statutory law of the State of West Virginia, I am further of the opinion that this proscription does not deny to the plaintiffs their Federal constitutional rights of freedom of speech, freedom of assembly or the free exercise of their religious beliefs. This power of school authorities to prohibit the use of a schoolhouse for religious worship is well recognized. See 47 Am.Jur. Schools, § 213 at 454 and collation of authorities therein.

In State ex rel. Greisiger v. Grand Rapids Board of Education, 88 Ohio App. 364, 100 N.E.2d 294, app. dsmd. 153 Ohio St. 474, 92 N.E.2d 393, cert. den. 340 U.S. 820, 71 S.Ct. 51, 95 L.Ed. 603, reh. den. 341 U.S. 917, 71 S.Ct. 733, 95 L.Ed. 1352, the Supreme Court of Ohio held that the refusal of the board of education to permit the plaintiffs to use school property for a religious meeting did not deny them any of their constitutional rights, saying:

"Appellants broadly contend that by reason of the refusal of their request by the board of education, they were denied their legal rights of freedom of speech, freedom of assembly and freedom of worship, contrary to the Constitution of the United States and the Constitution of Ohio.

"[8, 9] As already pointed out, the statutes give the board of education broad discretionary power. The plenary power thus granted, and the action taken by the respondent, must be deemed valid, unless it is clearly prohibited by the Constitution. (Citing cases.)

"It does not appear in the instant case that the provisions of the statutes under review unreasonably interfere with any constitutional right of appellants or that the authority conferred by such statutes on the board of education is incompatible with state or federal Constitution."

It should be noted that the regulation of the Board of Education denies to anyone, regardless of sect, the use of public school property for religious purposes. There is no invidious discrimination in the regulation and it relates only to the use of school facilities and not to the religious affiliations of the users.

In Poulos v. New Hampshire, 345 U.S. 395, 73 S.Ct. 760, 97 L.Ed. 1105, 30 A. L.R.2d 387 (1952), the Supreme Court of the United States said:

"The principles of the First Amendment are not to be treated as a promise that everyone with opinions or beliefs to express may gather around him at any public place and at any time a group for discussion or instruction. It is a *nonsequitur* to say that First Amendment rights may not be regulated because they hold a pre-

ferred position in the hierarchy of the constitutional guarantees of the incidents of freedom. This Court has never so held and indeed has definitely indicated the contrary. It has indicated approval of reasonable nondiscriminatory regulation by governmental authority that preserves peace, order and tranquillity without deprivation of the First Amendment guarantees of free speech, press and the exercise of religion."

This position of official "neutrality" evidenced by the regulation of the Board of Education here in question does not bespeak government hostility toward the religious beliefs of any individuals, including the plaintiffs herein, but is merely consistent with the well-established constitutional principle of the separation of Church and State. This principle and the courts' responsibility thereunder was clearly and emphatically stated by the late Mr. Justice Frankfurter in People of State of Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203 at 231, 68 S.Ct. 461 at 475, 92 L.Ed. 649:

"Separation means separation, not something less. Jefferson's metaphor in describing the relation between Church and State speaks of a 'wall of separation,' not of a fine line easily overstepped. The public school is at once the symbol of our democracy and the most pervasive means for promoting our common destiny. In no activity of the State is it more vital to keep out divisive forces than in its schools, to avoid confusing, not to say fusing, what the Constitution sought to keep strictly apart. 'The great American principle of eternal separation'—Elihu Root's phrase bears repetition—is one of the vital reliances of our Constitutional system for assuring unities among our people stronger than our diversities. It is the Court's duty to enforce this principle in its full integrity."

In the light of the foregoing observations, it is hereby ordered that the mo-

tions of the defendants for summary judgment and dismissal be and the same are hereby granted and the complaint herein dismissed.