William F. KEEGAN and Michael Szupper, Defendants-Appellants,

Thomas J. Mardaga et al., Intervenors-Appellants,

v.

UNIVERSITY OF DELAWARE, Plaintiff-Appellee.

Supreme Court of Delaware.

On Reargument Oct. 30, 1975.

Decided Nov. 12, 1975.

---

Arlen B. Mekler, Wise & Mekler, Wilmington, for defendants below, appellants.

James P. Collins, Healy & Collins, Wilmington, for intervening defendants below, appellants.

John P. Sinclair, Potter, Anderson & Corroon, Wilmington, and Philip B. Kurland, Donald E. Egan and Alan L. Unikel, Rothschild, Barry & Myers, Chicago, Ill., for plaintiff-appellee.

John S. Grady and Thomas Stephen Neuberger, Bader, Dorsey & Kreshtool, Wilmington, and Christopher Hall, San Bernardino, Cal., for amicus curiae.

Before McNEILLY, J., QUILLEN, Chancellor, and STIFTEL, President Judge.

McNEILLY, Justice: .

This is an appeal from a decision of the Court of Chancery granting plaintiff, University of Delaware, summary judgment and a permanent injunction against defendants, priests and intervening University students, prohibiting religious worship services in a commons room of the dormitory in which the students live. The pertinent facts and history of this case are succinctly stated in the Court's opinion, 318 A.2d 135 (1974). We emphasize, however, that we are dealing with a very particular factual situation involving a University campus dormitory.

The University contends that the Establishment Clause of the First Amendment, made applicable to the States by the Fourteenth Amendment, supports and requires the ban of all religious worship services from campus facilities. The priests and students contend that the strict enforcement of the University's policy is an infringement upon the Free Exercise Clause of the First Amendment.[1]

---

I. The First Amendment in its pertinent part reads as follows: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercising thereof; . . ."

The Vice-Chancellor reasoned that although allowance of services in the University dormitory need not offend the Establishment Clause, the University's policy did not demonstrate a substantial infringement upon the priests and students' right to the free exercise of religion.

As we see the case, there are three issues. First, would the abolition of the present University policy prohibiting religious worship in the campus dormitory run afoul of the prescribed tests for violation of the Establishment Clause of the Federal Constitution? Second, does the University policy constitute a legally recognizable burden on the students' Constitutional right to freely exercise their religion? Third, if the students' right to freely exercise their religion is legally burdened, is such burden justified by a compelling State interest?

The matter is now before the Court for decision after full argument and, as to the second issue only, reargument. This opinion constitutes the decision of the Court and supersedes prior opinions.

■ We concur with the Vice-Chancellor's rationale in concluding that abolition of present University policy towards religious worship in the commons room of the dormitory need not run afoul of the prescribed tests for establishment violations, i. e., would not have an effect that primarily advances religion, would not reflect a sectarian legislative purpose, and would not foster excessive government entanglement with religion. See *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); *Committee for Public Education v. Nyquist,* 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973). To allow religious worship groups the same rights and privileges attendant with the use of the commons room of the dormitory as are accorded other group activities could reflect a lawful accommodation. *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed.2d 954 (1952); *Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1953).

■ Thus, we hold that the University cannot support its absolute ban of all religious worship on the theory that, without such a ban, University policy allowing all student groups, including religious groups, free access to dormitory common areas would necessarily violate the Establishment Clause. The Establishment cases decided by the United States Supreme Court indicate that neutrality is the safe harbor in which to avoid First Amendment violations: neutral "accommodation" of religion is permitted, *Everson v. Board of Education,* 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947); *Zorach v. Clauson, supra,* while "promotion" and "advancement" of religion are not. *McCollum v. Board of Education,* 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948); *Abington School District v. Schempp, supra.* University policy without the worship ban could be neutral towards religion and could have the primary effect of advancing education by allowing students to meet together in the commons room of their dormitory to exchange ideas and share mutual interests. If any religious group or religion is accommodated or benefited thereby, such accommodation or benefit is purely incidental, and would not, in our judgment, violate the Establishment Clause. *Tilton v. Richardson,* 403 U.S. 672, 91 S.Ct. 2091, 29 L.Ed.2d 790 (1971). The commons room is already provided for the benefit of students. It is not a dedication of the space to promote religious interests. Therefore, in regard to the Establishment Clause, we agree with the view taken by the Court of Chancery.

■ The second issue presents us with more difficulty largely due to the words of degree frequently, and perhaps necessarily, employed by the United States Supreme Court. But it appears to us that the Vice-Chancellor applied the wrong test in the portion of his opinion on the Free Exercise Clause. While it is true that the opinion of the Court in *Sherbert v. Verner,* 374 U.S. 398, 406, 83 S.Ct. 1790, 1795, 10

L.Ed.2d 965 (1963) noted a "substantial infringement of appellant's First Amendment right", it did not indicate that this finding constituted the legal standard for the appellant's burden. Quite to the contrary, the Court, citing *Braunfeld v. Brown,* 366 U.S. 599, 607, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961), quoted the following language at 374 U.S. 404, at 83 S.Ct. 1794:

> "If the purpose or effect of a law is to impede the observance of one or all religions or is to discriminate invidiously between religions, that law is constitutionally invalid even though the burden may be characterized as being only indirect."

Similarly, the opinion of the court in *Sherbert,* at 374 U.S. 403, at 83 S.Ct. 1793, said that, if the State action is to be upheld:

> "it must be either because [it] represents no infringement by the State of [appellant's] constitutional rights of free exercise, or because any incidental burden on the free exercise of appellant's religion may be justified by a 'compelling state interest in the regulation of a subject within the State's constitutional power to regulate . . .' *NAACP v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 341, 9 L.Ed.2d 405, 421."

Thus, it seems to us that, while the Court in *Sherbert* thought the situation there demonstrated a "substantial infringement" of religious freedom, even an "incidental burden" on the free exercise of religion must be justified by a "compelling state interest". Once the individual demonstrates some Constitutional burden, whether substantial or incidental, direct or indirect, upon his free exercise of religion, the State must show a "substantial interest" sufficient to sustain its acts. *Johnson v. Robison,* 415 U.S. 361, 384–386, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Gillette v. United States,* 401 U.S. 437, 462, 91 S.Ct. 828, 28 L.Ed.2d 168 (1971); *Sherbert v. Verner, supra; Braunfeld v. Brown, supra.*

We recognize, as the University has argued on reargument, that there is nothing fixed or permanent about catch phrases in the judicial opinions cited above and that such words as "indirect" and "incidental" can refer to the relationship between the state action and its effect on the individual as well as to the severity of the burden on the individual. It is of course necessary to examine each factual situation.

But, if the burden is examined on the facts in this case, one must conclude it rises to a legally recognizable interest on the part of the students. The only activity proscribed by the regulation is worship regardless of whether one considers the proscription a direct or indirect burden on student activity. The commons area is already provided for student use and there is no request here that separate religious facilities be established. The area in question is a residence hall where students naturally assemble with their friends for many purposes. Religion, at least in part, is historically a communal exercise.

It may be that every class division involving religion would not constitute a burden in the Constitutional sense on the free exercise of religion. *Johnson v. Robison, supra.*[2] It may be that this case can be viewed as the mere denial of an economic benefit. Indeed, it can be argued, as it has been, that the question is whether the University must permit the students to worship on University property. But, in terms of religious liberty, the question is better put, in our judgment, from the perspective of the individual student. Can the University prohibit student worship in a common area of a University dormitory which is provided for student use and in which the University permits every other

---

2. It should be noted, however, that in the Johnson case, 415 U.S. at 385, footnote 19, 94 S.Ct. 1160, the Court felt the possible absence of burden was due to the relative benefits the challenged legislation had granted to conscientious objectors.

student activity?[3] It is apparent to us that such a regulation impedes the observance of religion in the sense of the *Sherbert* case.

Even in *Johnson v. Robison, supra,* where the impact of the statute, denial of veteran education benefits to alternative civilian service conscientious objectors, was less direct on religious exercise than the impact of the regulation here, the Court took care to find the Government's "substantial interest" was sufficient to sustain the challenged legislation. Thus, even there, the Court, for its decision, reached what we have designated the third issue in this case.

Counsel have agreed that this case is unique and precise precedents have not been supplied. While we recognize that different considerations may be involved under various Constitutional provisions, the varying nature of the legal proceedings, and varying factual situations, we nonetheless find some support for our views in two cases noted in the briefing and orally argued at re-argument by counsel for amicus curiae. In *Tucker v. Texas,* 326 U.S. 517, 66 S.Ct. 274, 90 L.Ed. 274 (1946), a freedom of press and religion case, the Supreme Court upheld the right of an ordained minister of Jehovah's Witnesses to distribute religious literature in a village owned by the United States, notwithstanding a request to leave by the manager of the village pursuant to his purported authority by federal regulation and Texas criminal law. The Court noted the village "had the characteristics of a typical American town." The case thus has similarities to the University owned dormitory situation here. Similarly, in *Healy v. James,* 408 U.S. 169, 92 S.Ct. 2338, 33 L. Ed.2d 266 (1972), it was held that a state supported college could not deny official recognition to student groups without justi-fication, for such a denial would abridge the First Amendment rights of individuals to free expression and free association. At the outset, the opinion noted that "state colleges and universities are not enclaves immune from the sweep of the First Amendment." 408 U.S. at 180, 92 S.Ct. at 2345.

We also note the following language from *Wisconsin v. Yoder, supra,* 406 U.S. at 220–221, 92 S.Ct. at 1536.

"The Court must not ignore the danger that an exception from a general obligation of citizenship on religious grounds may run afoul of the Establishment Clause, but that danger cannot be allowed to prevent any exception no matter how vital it may be to the protection of values promoted by the right of free exercise."

We think these conclusions in *Yoder* in regard to right of free exercise are worthy of weight here.

Finally, on the second issue, we do not think the cases of *Stein v. Oshinsky,* 348 F.2d 999 (2d Cir. 1965) and *Hunt v. The Board of Education,* 321 F.Supp. 1263 (S.D.W.Va.1971) dictate a different result than the conclusion we reach here. The Vice-Chancellor was careful to distinguish these cases, and we think he did so correctly. The *Stein* case upheld the prohibition of a voluntary prayer by kindergarten children in a classroom setting. The situation there approached a state sanctioned prayer imposed on children of an impressionable age supported by teacher supervisors. The *Hunt* case, while lacking the coercive situation found in *Stein,* still involved commuting high school students meeting voluntarily in classrooms or other premises of a high school. Neither case involved activity by adult residents of a living complex in common areas generally set aside for the benefit of such residents.

3. When so phrased the Free Exercise issue here does not run afoul of the statement in Justice Douglas' concurrence in *Sherbert v. Verner, supra,* 374 U.S. at 412, 83 S.Ct. at 1798 that "the Free Exercise Clause is written in terms of what the government cannot do to the individual, not in terms of what the individual can exact from the government." This case is also far different from a demand by supporters of religious schools for state financial support. *Brusca v. Missouri ex rel. State Board of Education,* 332 F.Supp. 275 (E.D.Mo.1971), affirmed, 405 U.S. 1050, 92 S.Ct. 1493, 31 L.Ed.2d 786 (1972).

We conclude that the regulation involved here has, in this factual context, both the purpose and the effect of impeding the observance of religion and thus constitutes a legal burden on the students' Constitutional right to freely exercise their religion.

Since the state policy here impedes the observance of religion and acts as a prior restraint upon all religious worship, as opposed to all other activities, and thus constitutes legal burden upon the students' Constitutional rights, it requires a showing of a compelling state interest for justification. *Sherbert v. Verner, supra.* We therefore reach the third issue in the case. The State was not called upon to offer justification nor was any shown. The Vice-Chancellor erred in holding that the students had not shown the requisite infringement on their free exercise rights and in not demanding an evidentiary hearing on the issue of justification.[4]

Reversed and remanded for further proceedings consistent with this opinion.

---

4. Since it has not been argued, we express no opinion on whether the worship prohibition can be justified on any basis, including a secular purpose to avoid excessive government entanglement by a State University with religion.