## TOWNSEND v. HAGAN *et al.*

School-houses: USE FOR RELIGIOUS WORSHIP. The electors of a school district may legally permit the school-houses in the district to be used for the purposes of religious worship and Sunday schools.

### SATURDAY, OCTOBER 11.

APPEAL from an order of Hon. H. W. MAXWELL, judge of fifth judicial district, dissolving an injunction.

This proceeding was commenced to enjoin the defend-

ants from permitting the public school-houses, in their several sub-districts, to be used for holding religious meetings and Sunday-schools therein. On a hearing before the judge at chambers the injunction was, on motion of defendant, dissolved. Plaintiff appeals.

*Todhunter & Williamson* for the appellant.

*McNiel, Bryan & Seevers* for the appellee.

MILLER, J.—For the purposes of the hearing on appeal in this court, the parties have stipulated that the evidence establishes the following facts:

" 1. The plaintiff is a resident and tax payer in the district township of Belmont, Warren county, Iowa.

" 2. The defendants are sub-directors in said district township.

" 3. The school-houses in said sub-districts were built by public taxation levied on the whole district township.

" 4. The repairs are made, fuel purchased and schools supported by public taxation levied upon the whole district township.

" 5. The people of said district township and others have been using said school-houses for public religious meetings and Sabbath-schools ever since the township was organized and the first school-house was built until in some places churches were built for that purpose.

" 6. Some of the school-houses and their appendages have heretofore been damaged by the congregations at their religious meetings.

" 7. It is not shown that said school-houses are in danger of being damaged more than ordinary wear, nor that the school fuel will be used by the people at their religious meeting and Sabbath-schools if not restrained by injunction.

" 8. The electors, at their regular meeting in March, 1871, passed a resolution to authorize all religious denominations to hold their meetings in all the school-houses of the district township.

" 9. There is not a sufficient number of church build-

ings in said township to accommodate the people in their religious meetings and Sabbath-schools.

"10. The people of the district township, including the defendants, will use said school-houses in some or all of said sub-districts for religious meetings and Sabbath-schools, if not restrained by injunction.

"11. There are three church buildings in said township.

"12. It is shown by the testimony that, in some of the sub-districts, the fuel purchased by the citizens for meeting purposes was mixed with the school-house fuel; in others, it was kept separate. In one subdivision, the fuel for meeting purposes was used out of the school-house fuel; but the contractor who furnished the coal for the school-house, in his settlement with the school board, deducted for the price of thirty bushels of coal on account of fuel used by said meetings, and it is not shown clearly by the testimony that the school-house fuel lost any thing by the mixing of said fuel, or the use thereof by said meetings."

The argument of appellant's counsel, briefly stated, is, that holding religious meetings and Sabbath-schools in the public school-houses of the district is an illegal use of the same, and that the sub-directors have no power to permit or authorize such use, nor have the electors any such authority.

The agreed statement of facts shows that there is no apprehension or danger of injury to the school-houses beyond ordinary wear, or that the fuel or other public property is likely to be injured; and the only question submitted for our consideration is, whether the use complained of is unlawful. It may be here remarked that counsel have not brought to our attention any provision of law directly prohibiting the reasonable use of public school-houses for religious worship, or Sabbath-schools or any other kind of meetings, but the conclusion that such use is illegal is reached only by argument. Is the argument sound and the conclusion

legitimate ? The statute confers authority on the electors of the district, when legally assembled, " to direct the sale *or other disposition* to be made of any school-house * * * that may belong to the district." § 6, chap. 172, Laws of 1862. Whether a school-house or school-houses shall be sold or *otherwise disposed of* rests primarily with the electors of the district. They have here given them the authority to sell a school-house or make such other disposition of it as they may determine. They may sell or lease it as they think proper, or permit it to be used for any proper purpose. Section 48 of the same chapter provides that the sub-director " shall have the control and management of the school-house " (in his sub-district) " unless otherwise ordered by a vote of the district-township meeting." In the case before us the use of the several school-houses in the district for religious meetings and Sabbath-schools was permitted directly by a vote of the electors at a district-township meeting, so that in this particular the control and management of the school-houses is taken out of the hands of the sub-directors. Their authority in the premises is subject to the control of the electors of the township, who have exercised their authority and directed that the school-houses shall be opened for the use of religious worship and Sabbath-schools. It will thus be seen that though it be admitted that such use of the school-houses is illegal, the sub-directors are not at fault. They are not committing the alleged unlawful acts and cannot be enjoined for acts done by the township meeting over which they have no lawful control. But it is urged that the electors have no legal authority to permit the use of the school-houses for the purposes complained of, and that, therefore, the sub-directors are not bound thereby. The position of appellant's counsel is that the electors have no power to permit the use of the school-houses for any purpose except for the use of the public schools. If this be correct, then the keeping of a select school in a public

school-house would be prohibited, although it be conducted in all respects as a public school; and thus one tax payer in the district could prevent, by injunction, any select schools being kept in the school-houses of the district, though every other person in the district desired them, and during a time of the year when there were no public schools kept in the district. There exists no reason for excluding Sabbath-schools from the school-houses that does not exist, also, to select schools. If it be said that in Sabbath-schools the Scriptures are read and commented upon, we answer, the same may be done in select schools. So also may sectarian dogmas be taught in such schools as are in religious meetings. Those who attend either religious worship, Sabbath or select schools, do so voluntarily. Every one is at liberty to stay away who chooses to do so.

We have seen that the statute confers the power on the electors of the district when legally assembled to make such disposition of the school-houses as they may deem right and proper. They may permit any reasonable and proper use of them which, in their discretion, may be determined upon. That the use in the present case is reasonable clearly appears from the facts agreed upon, and that it is proper, ought not to be questioned in a christian State. Whether a court of equity will enjoin an abuse of the discretion, vested in the people of a school district, we do not, as we need not, determine. In this case we hold that there has been no abuse of discretion whatever.

The order dissolving the injuction is

Affirmed.