# THE STATE OF IOWA:

## DES MOINES, DECEMBER TERM, A. D. 1878.

IN THE THIRTY-SECOND YEAR OF THE STATE.

PRESENT:

HON. JAMES H. ROTHROCK, CHIEF JUSTICE.
 " JOSEPH M. BECK,
 " AUSTIN ADAMS,
 " WILLIAM H. SEEVERS, } JUDGES.
 " JAMES G. DAY.

DAVIS v. BOGET ET AL.

1. **School District:** USE OF SCHOOL-HOUSE. The electors of a district township, when legally assembled, may authorize the use of the school-houses of the district for religious purposes, and under the authority thus conferred a sub-director is empowered to permit the school-house of his sub-district to be so used.

2. ———: ———: CONSTITUTIONAL LAW. The use of a school-house for such purpose, when so authorized, is not prohibited by section 3, article 1 of the Constitution.

*Appeal from Iowa Circuit Court.*

FRIDAY, DECEMBER 6.

IT is alleged in the petition that the district township of Lenox, in Iowa county, is composed of four sub-districts; that the plaintiff is a resident of sub-district No. 1, and that defendants are members of, and comprise, the board of directors of said district township; that at the annual meeting of said board, and the electors of said district township, held on the 12th day of March, 1877, the said electors voted upon and passed a resolution taking the charge and control of the school house in said sub-district No. 1 away from the said sub-director of said sub-district, and placing the charge and control of the same in the said board of directors, and directing that the key of the door of the school-house in said sub-district No. 1 should be placed in the hands of the president of the said district township board; and that all the school-houses in said township should be opened for Sabbath school and religious worship, and lectures on moral and scientific subjects, at any time when it will not interfere with the regular progress of the schools; and that any person asking for the use of any school-house should be held strictly responsible for all damages done to the same by such use, and if the persons desiring the use of said school-houses for such purposes should be financially irresponsible, then the board should require security for any damages that might be done to said houses; that the defendant E. J. Boget is director of said sub-district No. 1, and is president of the said township board, and the key to said school-house is in his possession and under his control; that the other school-houses in said township are opened for the purposes aforesaid, and their use for the same is permitted; that on the 26th day of April, 1877, the plaintiff requested the said Boget to deliver to him the key to said school-house, that he and others might occupy the house for Sabbath school and religious worship on the

Sabbath, and offered security for the proper care of the same, but said Boget refused and neglected, and still refuses, to allow the key to be taken for the purpose of opening the house for such use, and refuses to open said house himself; that afterward, at a meeting of the said board of district township directors, plaintiff requested of said board the use of said school-house for said purposes, and offered security for the proper care thereof, but said board refused and neglected to take any action in the matter; that by the wrongful action of the said board and its president, in refusing to allow said house to be so used, the plaintiff and other residents of said district No. 1 are injured, there being no church building in said district No. 1, nor at a convenient distance from said district, which can be used for the purposes aforesaid.

It is prayed that a writ of *mandamus* may issue commanding the said Boget and said board to permit the use of said school-house for said purposes.

There was a demurrer to the petition, which was overruled, and judgment was rendered for the plaintiff. Defendants appeal.

*Rumple & Lake*, for appellants.

*Hedges & Alverson*, for appellee.

ROTHROCK, CH. J.—I. In addition to the foregoing statement it may be proper to say that it was stipulated by the parties in the court below that the school-house in sub-district No. 1 cost that district about two hundred dollars, in addition to its proportionate share of the cost of the house, and that a small majority of the electors of the sub-district are opposed to the use of the house for religious worship.

In our opinion these facts cannot control the legal rights of the parties, and they must be regarded merely as accounting for what would otherwise seem as an unreasonable refusal of the defendant Boget to carry out the wishes of a majority of the electors of the district township.

It is insisted by counsel for appellant that the action of *mandamus* will not lie because the act required to be performed is not one which the law enjoins, as a duty resulting from an office, trust or station, as provided in section 3373 of the Code. This would no doubt be correct if the electors of the township had not the power to determine that the school-house might at proper times be used for religious meetings and Sabbath schools. If the electors have such power, then the duty of the directors to open the houses for these purposes is as clearly enjoined by law as though expressly provided by statute, and the action of *mandamus* will lie.

II. It appears from the record before us that the electors of the district township, by a resolution duly adopted at a regular meeting, placed the control of the school-house in question in the board of district township directors, and ordered that it should be opened for Sabbath school, religious worship, and lectures on moral and scientific subjects, at such times as would not interfere with the regular progress of the public schools. It also appears that this action was taken because the sub-director of the sub-district in question had refused to allow the house to be used for the purposes named.

1. SCHOOL district: use of school-house.

The main question in the case, then, is, did the district township electors have the legal power to direct the house to be used for the purposes aforesaid?

We cannot regard this as an open question in this State. In *Townsend v. Hagan et al.*, 35 Iowa, 194, it was held that the statute confers authority on the electors of the district, when legally assembled, "to direct the sale or other disposition to be made of any school-house," and that the sub-director shall have the control and management of the school-house in his sub-district, unless otherwise ordered by a vote of the district township meeting; and that when the electors of the township, by a direct vote, determined that the school-houses should be opened for religious worship and Sabbath schools, such order was valid, and was such a disposition of

the house as might lawfully be made. This decision was made in the year 1872. It is founded upon a construction of chapter 172 of the Laws of 1862. The same provisions are contained in sections 1717 and 1753 of the Code. In view of the fact that the statute construed in the case cited has been re-enacted by the General Assembly since that decision was made, and presumably with a knowledge of the construction put upon it by this court, we are not disposed to disturb the ruling in that case.

III. It is next insisted that, notwithstanding such use of the house in question may be authorized under the construc-

2. ——: ——: constitutional law.

tion of the statute in *Townsend v. Hagan, supra,* yet that such use is in conflict with section 3, article 1 of the Constitution of this State, which provides that "the General Assembly shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof; nor shall any person be compelled to pay tithes, taxes, or other rates for building or repairing places of worship, or the maintenance of any minister or ministry."

It is argued that the permanent use of a public school-house for religious worship is indirectly compelling the tax-payer to pay taxes for the building or repairing of places of worship.

Aside from the consideration that in *Townsend v. Hagan, supra,* it was determined that the district electors did have such power as is here complained of, and that such use was not unreasonable, we incline to think that the use of a public school building for Sabbath schools, religious meetings, debating clubs, temperance meetings and the like, and which, of necessity, must be occasional and temporary, is not so palpably a violation of the fundamental law as to justify the courts in interfering. Especially is this so where, as in the case at bar, abundant provision is made for securing any damages which the tax-payer may suffer by reason of the use of the house for the purposes named. With such precaution the

amount of taxes any one would be compelled to pay by rea-
son of such use would never amount to any appreciable sum.

We may further say that the use for the purposes named is
but temporary, occasional, and liable at any time to be denied
by the district electors, and such occasional use does not con-
vert the school-house into a building for worship, within the
meaning of the constitution. The same reasoning would
make our halls of legislation places of worship, because in
them, each morning, prayers are offered by chaplains.

Counsel for appellant have cited some cases which seem to
hold a different rule from that here announced. We need not
refer to them, in view of the construction placed upon our stat-
ute in *Townsend v. Hagan, supra,* and with which we are con-
tent.

AFFIRMED.