USE OF SCHOOL DISTRICT PROPERTY BY RELIGIOUS ORGANIZATION A board of education may rent on an occasional basis school district property to a religious organization for a religious service where a fair and reasonable charge is made to cover the cost of the use of such property. The Attorney General has considered your request for an opinion on the following question: "Is it permissible for an Oklahoma School District acting through the Board of Education to lease or rent for hire school district property to a religious organization for adequate and reasonable consideration to be used for a religious service when said school property is not being used otherwise?" The Oklahoma School Code expressly authorizes boards of education to permit the use of school district property for religious purposes and make a reasonable charge to cover the cost of the use of such property. Title 70 O.S. 5-130 [70-5-130] (1971) provides: "The board of education of any school district may, under such regulations and conditions as it may prescribe, open any school building and permit the use of any property belonging to such district for religious, political, literary, cultural, scientific, mechanical or agricultural purposes, and other purposes of general public interest and may make a reasonable charge to cover the cost of the use of such building and property." (Emphasis added) Notwithstanding the above statute, an opinion of the Attorney General No. 64-242 concluded that it would be unconstitutional for a board of education to rent its stadium or other property which "as a matter of fact" fell within the scope of Article II, Section 5 of the Oklahoma Constitution, which provides: "No public money or property shall ever be appropriated, applied, donated, or used directly or indirectly, for the use, benefit, or support of any sect, church, denomination, or system of religion, or for the use, benefit or support of any priest, preacher, minister, or other religious teacher or dignitary, or sectarian institution as such." The opinion goes further to state that a regular denominational church service would be clearly prohibited but a cultural or sporting event sponsored by a church or denomination could be without the constitutional prohibition of Article II, Section 5 . Your inquiry calls for reexamination of the precise question presented in Opinion 64-242. In Murrow Indian Orphans Home v. Childers, 197 Okl. 249, 171 P.2d 600
(1946), the State Board of Affairs had entered into a contract with a sectarian institution for the care of orphaned children, and the court considered the purpose underlying the adoption of Article II, Section 5 Oklahoma Constitution: ". . . It is not the exposure to religious influence that is to be avoided; it is the adoption of sectarian principles or the monetary support of one or several of all sects that the State must not do . . . "The circumstances under which public money could be given, applied or appropriated to religious institutions without any return to the State, or could be so used as to make apparent the paramount purpose to support such institutions under the guise of receiving value in return are known and can be recognized and can be stopped. ". . . So long as they involve the element of substantial return to the State and do not amount to a gift, donation, or appropriation to the institution having no relevancy to the affairs of the State, there is no constitutional provision offended." (Emphasis Added) A dissenting opinion by Justice Riley discussed at length the historical basis for the concept of separation of church and state and would have declared invalid the contracts in question by a strict construction of Article II, Section 5. A recent opinion of the Supreme Court of Arizona in Pratt v. Arizona Board of Regents, 520 P.2d 514 (1974) involved a challenge to the action of the Arizona Board of Regents in agreeing to lease to Evangelist Billy Graham the football stadium located on the campus of Arizona State University. The basis for the action was the alleged violation of a state constitutional provision practically identical to Article II, Section 5 of the Oklahoma Constitution. The Court viewed the purpose of such provision as follows: "We believe that the framers of the Arizona Constitution intended by this section to prohibit the use of the power and the prestige of the State or any of its agencies for the support or favor of one religion over another, or of religion over nonreligion. The State is mandated by this constitutional provision to be absolutely impartial when it comes to the question of religious preference, and public money or property may not be used to promote or favor any particular religious sect or denomination or religion generally. It does not necessarily follow, however, that the framers of Arizona's Constitution intended to entirely prohibit the use by religious groups of public and school property for religious purposes, when it is clear that such does not infer support or favor by the State of that particular religious group." The Court held that such a lease on a permanent basis or for less than the fair rental value would not be permissible under the constitutional provision. However, the Court concluded: ". . . We believe that the lease in question does not place the power, prestige, or influence of the State behind Reverend Graham's religious beliefs and practices, nor, it being for a fair rental price, is it an appropriation or application of State property for religious purposes." Attorney General's Opinion 64-242 relied upon the case of Board of Education for Independent School District No. 52 v. Antone, Okl., 384 P.2d 911
(1963), which held that a board of education is unauthorized under Article II, Section 5 to permit school buses operated by the public school district at public expense to provide transportation for pupils of a parochial school. Antone is distinguishable from the question presented by your inquiry in that the supplying school buses with their attendant maintenance and operation costs directly provided financial aid to parochial schools with no compensation being received in return. Our reading of the applicable court decisions, particularly Childers and Pratt, supra, leads us to the conclusion that Article II, Section 5 is not violated where a board of education pursuant to 70 O.S. 5-130 [70-5-130] (1971) rents a school facility to a religious organization for a religious service for a fair rental price on an occasional basis. Insofar as Opinion 64-242 is inconsistent with this opinion the same is overruled. It is, therefore, the opinion of the Attorney General that your question be answered in the affirmative. A board of education may rent on an occasional basis school district property to a religious organization for a religious service where a fair and reasonable charge is made to cover the cost of the use of such property. (Joe C. Lockhart)