135 N.J. Super. 257 (1975)
343 A.2d 127
ABRAHAM RESNICK, PLAINTIFF,
v.
EAST BRUNSWICK TOWNSHIP BOARD OF EDUCATION, REFORM TEMPLE OF EAST BRUNSWICK, EAST BRUNSWICK BAPTIST CHURCH, NATIVITY EVANGELICAL LUTHERAN CHURCH OF EAST BRUNSWICK, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
June 26, 1975.
*258 Mr. Sanford Rader for plaintiff (Messrs. Kovacs, Anderson, Horowitz & Rader, attorneys).
*259 Mr. Frank J. Rubin for defendant East Brunswick Township Board of Education (Messrs. Rubin & Lerner, attorneys).
Mr. Samuel H. Davis and Mr. Ira S. Novak for defendant Reform Temple of East Brunswick (Messrs. Dubowsky & Davis and Messrs. Gross, Novak & Klein, attorneys).
Mr. Seymour Gelzer for defendant East Brunswick Baptist Church (Messrs. Iaria & Gelzer, attorneys).
Mr. Stephen R. Philpitt for defendant Nativity Evangelical Lutheran Church of East Brunswick.
FURMAN, J.S.C.
Plaintiff citizen and taxpayer seeks to enjoin use of public schools within his municipality for religious services and religious education. He charges violations of the governing statute (N.J.S.A. 18A:20-34) and of the United States and New Jersey Constitutions (U.S. Const., Amend. I and Amend XIV; N.J. Const. (1947), Art. I, par. 3 and par. 4).
The facts established at trial are as follows. Since 1962 defendant board of education has leased school facilities at hours not interfering with the school curriculum and activities to various religious groups, as well as to other nonprofit social, civic, recreational and charitable groups. A rental is assessed approximating the cost of janitorial services, except that if the meeting is for fund-raising purposes or admission is charged, a substantially higher rental is assessed in accordance with a rental schedule. By way of illustration, a religious group would pay $125 for four hours use of an all-purpose room and ten classrooms under the rental schedule, only $18 at present towards the cost of janitorial services.
Defendant East Brunswick Baptist Church rents an all-purpose room in an elementary school for religious services and ten classrooms for religious instruction on Sundays, and the all-purpose room for a prayer meeting on Wednesday *260 evenings. Bibles, hymnals and a wooden pulpit with a cross are stored in a closet off the all-purpose room, together with school recreational equipment. The East Brunswick Baptist Church owns a five-acre building site in the township, has retained an architect and an engineer and has applied for site plan approval to the township planning board. Its initial rental of public school facilities was in October 1968. Its application was for an indefinite period of time. Defendant board of education has approved yearly renewals.
Defendant Nativity Evangelical Lutheran Church limits its use of the facilities of a second elementary school to 1 1/2 hours of religious instruction in ten classrooms on Sundays, with the all-purpose room as a headquarters. Sunday School literature and materials are locked in a cabinet. The Nativity Evangelical Lutheran Church has its own church in the township for religious services. It has retained an architect, who is working on plans for a religious education building. Its initial rental of public school facilities was in September 1968. Its application was for an indefinite period of time. Defendant board has approved yearly renewals.
Defendant Reform Temple of East Brunswick rents most of a third elementary school building for religious services and religious instruction for five hours on Sundays, its gymnasium for religious services and a social gathering on Friday evenings, and five classrooms for Hebrew language instruction, limited to children of the congregation, on Tuesday and Thursday evenings. Some religious artifacts are stored at the school. The Reform Temple has a building site in the township under option to purchase and has retained an architect. Its initial rental of public school facilities was in March 1973. Its application was for an indefinite period of time. Defendant board has approved yearly renewals.
Defendant board is limited in its exercise of powers to those granted expressly or by necessary or fair implication in state legislation. Botkin v. Westwood, 52 N.J. Super. 416, 427 (App. Div. 1958), app. dism. 28 N.J. 218 (1958). *261 N.J.S.A. 18A:20-34 authorizes boards of education to permit use of school facilities, when not in use for school purposes, for:
a. The assembly of persons for the purpose of giving and receiving instruction in any branch of education, learning or the arts, including the science of argiculture, horticulture and floriculture;

* * *
c. The holding of such social, civic and recreational meetings and entertainments and such other purposes as may be approved by the board.
Purportedly pursuant to this authorization defendant board adopted rules and regulations permitting use of its facilities by "any East Brunswick organization which is non-profit in nature," including, as implemented, religious bodies without preference or distinction among them. No judicial decision is cited in support, and only one administrative ruling, McGuire Air Force Base v. North Hanover Tp. Bd. of Ed., S.L.D. 62 (1963), directing the North Hanover board to permit use of public school facilities owned by the Federal Government, in the absence of any other suitable accommodation, for weekend religious and moral training of dependent children of United States military personnel, an obligation of the Commander of the base to provide by Air Force regulation. In openings allusions were made to a widespread practice in the State of religious use of school buildings during nonschool hours, but the proofs dwindled to one such current use and two such former uses.
Religious uses are not specified in N.J.S.A. 18A:20-34(c), although constitutional and legislative enumeration of "religion" or related terms is commonplace. E.g., N.J. Const. (1947), Art. VIII, § 1, par. 2; N.J.S.A. 10:1-3; N.J.S.A. 15:14-6; N.J.S.A. 18A:38-5.1; N.J.S.A. 18A:72A-3; N.J.S.A. 39:4-139; N.J.S.A. 45:24-7.
To encompass religious meetings and purposes within "social, civic and recreational" in N.J.S.A. 18A:20-34(c) overlooks the Legislature's meticulous listing of "religion" or "creed" in other statutes. Expressio unius est exclusio *262 alterius is applicable as a rule of construction. The phrase "such other purposes" in (c) is not an imprimatur for purposes other than "social, civic and recreational." The contention that N.J.S.A. 18A:20-34(c) authorizes religious services and education in public school buildings along with "social, civic and recreational" uses must be rejected.
As to N.J.S.A. 18A:20-34(a) a religious service is not "instruction." Rather it is an assemblage of persons offering worship and homage to Divinity according to established exercises and rituals. Defendant board lacks statutory authorization to rent its facilities for religious services. Only the Sunday School and Hebrew language instruction fit within the sanction in (a) of "instruction in any branch of education, learning or the arts," which must be construed to embrace religious literature and dogma. Cf. Lewis v. New York City of Bd. of Ed., 157 Misc. 520, 285 N.Y.S. 164, 169 (Sup. Ct. 1935).
The constitutional issue must therefore be met whether indefinite use of public school facilities for Sunday School and Hebrew language instruction by organized religious bodies, at rentals defraying only the cost of janitorial services, is such governmental assistance to religion or such entanglement between government and religion as to offend the United States and New Jersey Constitutions.
The United States Constitution, First Amendment, provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..." That amendment is applicable to the States under the Fourteenth Amendment. Meek v. Pittenger, ___ U.S. ___ 95 S.Ct. 1753, 44 L.Ed.2d 217, 43 U.S.L.W. 4596 (Decided May 19, 1975); Illinois ex rel. McCollum v. Board of Education, 333 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948); Everson v. Board of Education, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947), reh. den. 330 U.S. 855, 67 S.Ct. 962, 91 L.Ed. 1297 (1947).
*263 The New Jersey Constitution provides in Art. I, par. 3:
No person shall be deprived of the inestimable privilege of worshipping Almighty God in a manner agreeable to the dictates of his own conscience; nor under any pretense whatever be compelled to attend any place of worship contrary to his faith and judgment; nor shall any person be obliged to pay tithes, taxes or other rates for building or repairing any church or churches, place or places of worship, or for the maintenance of any minister or ministry, contrary to what he believes to be right or has deliberately and voluntarily engaged to perform.
The New Jersey Constitution provides in Art. I, par. 4: "There shall be no establishment of one religious sect in preference to another; no religious or racial test shall be required as a qualification for any office or public trust."
Chief Justice Vanderbilt reviewed the history of the separation of church and state and the prohibition against the establishment of religion in Tudor v. Rutherford Bd. of Ed., 14 N.J. 31 (1953), cert. den. Gideons International v. Tudor, 348 U.S. 816, 75 S.Ct. 25, 99 L.Ed. 644 (1954), holding unconstitutional the distribution of King James version bibles in the public schools to students voluntarily accepting them.
Illinois ex rel. McCollum v. Board of Education, supra, struck down as unconstitutional a public school program of released time during the school day for religious education classes conducted by sectarian teachers in public school buildings. The rationale was that the program had a predominant purpose to benefit religions and thus, although without preference or discrimination, infringed the First and Fourteenth Amendments.
Unquestionably instruction of the young in the beliefs, writings and practices of a religion is of prime importance, instilling understanding and inculcating adherence. Religious instruction of adults, for example, in the adult classes of the East Brunswick Baptist Church Sunday School, may broaden that understanding and reinforce that adherence. Religious instruction is an indispensable adjunct to religious worship. *264 The Sunday School instruction in defendant board's schools must be found to be a religious use. Likewise the Hebrew language instruction is pervasively religious.
Other States have split in judicial decisions whether use of public school facilities in nonschool hours for religious purposes is constitutionally or statutorily authorized. See 5 A.L.R. 886 (1920); 141 A.L.R. 1153 (1942); 79 A.L.R.2d 1163 (1961). Upholding such religious use are Pratt v. Arizona Board of Regents, 110 Ariz. 466, 520 P.2d 514 (Sup. Ct. 1974); Southside Estates Bapt. Church v. Board of Trustees, 115 So.2d 697 (Fla. Sup. Ct. 1959); Nichols v. School Directors, 93 Ill. 61, 34 Am. R. 160 (Sup. Ct. 1879); Davis v. Boget, 50 Iowa 11 (Sup. Ct. 1878). Striking down religious use of public school facilities as invalid by constitution or statute are Harfst v. Hoegen, 349 Mo. 808, 163 S.W.2d 609 (Sup. Ct. 1942); Hysong v. School Dist., 164 Pa. 629, 30 A. 482 (Sup. Ct. 1894); Spencer v. Joint School District, 15 Kan. 259, 22 Am. R. 268 (Sup. Ct. 1875); Baggerly v. Lee, 37 Ind. App. 139, 73 N.E. 921 (Ct. App. 1905).
The argument is pressed that defendant board's rules and regulations permitting use of public school facilities for instruction by religious organizations are intended to benefit nonprofit organizations generally and that exclusion of religious organizations from such use would unconstitutionally inhibit religion. See Chief Justice Weintraub's dictum in Clayton v. Kervick, 56 N.J. 523, 529 (1970), vacated 403 U.S. 945, 91 S.Ct. 2275, 29 L.Ed.2d 854 (1971), on remand 59 N.J. 583 (1971):
Hence the secular aim of a statute may touch the interests of religion, and when a statute does, the question arises whether it violates the "establishment clause" to accord to a sectarian institution the benefit of that secular aim or whether to deny that benefit because the institution is sectarian will inhibit religion and thereby equally offend the Amendment.
A parallel is drawn to the prevailing state property tax exemption of organized religions, which was sustained in *265 Walz v. Tax Commission, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970). A classification of institutions with beneficial and stabilizing influences in the community, including religions, was held proper in Walz.
These authorities are distinguishable. The tax exemption of religions does not involve an expenditure of tax moneys. Defendant religious bodies enjoy the use of defendant board's public school facilities but pay for janitorial services only and not, for example, for utilities, which are paid for out of public school taxes. The public policy against tax foreclosure on churches is inapplicable. Religious bodies, unlike most other nonprofit organizations, maintain buildings, that is, houses of worship. The word "church" denotes both the building and the institution. As the Nativity Evangelical Lutheran pastor conceded in testimony, a congregation which has public facilities available to it is "off to a good start." It can thus postpone its church or temple building program for years, a substantial credit between the nominal rental it pays and what it would have paid as rental for comparable private facilities.
The religious freedom provisions of the New Jersey Constitution are specifically drawn. Defendant board's program under attack is not a preference of one religion but is available to all religions until the capacity of its school facilities is filled, a remote contingency. The outlay of public school taxes is minimal but in violation of Art. I, par. 3. An upward adjustment of the rentals for Sunday School and Hebrew language instruction to reflect extra utility, heating and administrative, as well as janitorial, costs would obviate that state constitutional invalidity.
The First Amendment of the United States Constitution, although its literal language only prohibits laws respecting an establishment of religion, was intended, according to Thomas Jefferson, to erect "a wall of separation between Church and State." As most recently applied to Pennsylvania legislation in Meek v. Pittenger, supra, the First and Fourteenth Amendments sanction state loans of textbooks *266 acceptable for use in the public schools to students attending nonpublic schools, bar state loans of instructional materials and equipment, including periodicals, photographs, maps, charts, sound recordings, films, projection equipment, recording equipment and laboratory equipment, to nonpublic schools, and bar state assignments of publicly employed professional staff with supportive materials and equipment for both accelerated and remedial instruction, speech and hearing therapy and other auxiliary services to nonpublic schools. More than 75% of the nonpublic schools in Pennsylvania are church-related.
The rationale of Justice Stewart's opinion for the court is that loans to church-related schools, even of wholly secular materials and equipment, amount to massive aid to religion, neither indirect nor incidental, thus impermissibly establishing religion; that, following Board of Education v. Allen, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968), loans of textbooks to nonpublic school students make available to children the benefits of a general program, thus fitting within constitutional bounds, and that supplying instructional personnel and materials and equipment for special instruction, therapy and other services is fraught with the potential of entanglement between church and state, administrative entanglement in "continuing surveillance" to guarantee that the subsidized instruction is not sectarian, and political entanglement because of yearly confrontations over state appropriations, with the peril of division along religious lines.
Justice Stewart's opinion restates three tests to determine the constitutionality of state legislation under the First and Fourteenth Amendments: Has it a secular legislative purpose? Does its "primary effect" neither advance nor inhibit religion? Does its administration avoid excessive government entanglement with religion? See also, Committee for Public Education v. Nyquist, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973); Lemon v. Kurtzman, *267 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), reh. den. 404 U.S. 876, 92 S.Ct. 24, 30 L.Ed.2d 123 (1971); Walz v. Tax Commission, supra.
In Lemon, which struck down as unconstitutional Pennsylvania and Rhode Island legislation providing state reimbursement to nonpublic schools for teachers' salaries, textbooks and instructional materials in specified secular subjects, Chief Justice Burger graphically delineated the peril of church-state entanglement:
A broader base of entanglement of yet a different character is presented by the divisive political potential of these state programs. In a community where such a large number of pupils are served by church-related schools, it can be assumed that state assistance will entail considerable political activity. Partisans of parochial schools, understandably concerned with rising costs and sincerely dedicated to both the religious and secular educational missions of their schools, will inevitably champion this cause and promote political action to achieve their goals. Those who oppose state aid, whether for constitutional, religious, or fiscal reasons, will inevitably respond and employ all of the usual political campaign techniques to prevail. Candidates will be forced to declare and voters to choose. It would be unrealistic to ignore the fact that many people confronted with issues of this kind will find their votes aligned with their faith.
Ordinarily political debate and division, however vigorous or even partisan, are normal and healthy manifestations of our democratic system of government, but political division along religious lines was one of the principal evils against which the First Amendment was intended to protect. [403 U.S. at 622, 91 S.Ct. at 2115.]
Neither Meek, Lemon nor McCollum is parallel on its facts. Also McCollum is limited by Zorach v. Clauson, 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952), which upheld the constitutionality of a public school program of released time during the school day for religious education classes conducted by sectarian teachers outside public school buildings. The distinction, significantly, is that public school classrooms were used for religious instruction in McCollum, not in Zorach.
The three tests measuring First and Fourteenth Amendments constitutionality posited by the United States Supreme Court, together with the rationale of Meek and other *268 recent authorities, must be applied to N.J.S.A. 18A:20-34 and the rules and regulations of defendant board of education pursuant thereto, which permit use of public school facilities for religious instruction by defendant religious bodies.
As administered, defendant board's rules and regulations have provided significant financial aid indefinitely to defendant religious bodies, up to seven years to two of them. The program involves entanglement between church and state, administrative entanglement in the record keeping and scheduling by defendant board's employees, and political entanglement in subjecting defendant board's members, elected officials, to the demands and pressures of religious bodies and of those opposing them to approve or disapprove leases for religious use of public school facilities. In addition, religious books and artifacts stored in the public school buildings are accessible to children during school hours.
Defendant board's leases to defendant religious bodies are held to be in violation of the First and Fourteenth Amendments to the Federal Constitution, as well as of Art. I, par. 3 of the State Constitution. This holding is limited to its facts. Specifically, this holding does not deal with leases of public school facilities to religious bodies at rentals approximating what would be charged on the open market for comparable private facilities, nor with leases of public school facilities for temporary periods during emergencies such as after a fire or flood.
Under the circumstances the enforcement of this judgment by an injunction forthwith in effect would be harsh. Jurisdiction is retained. Within 45 days defendant board may present to this court for its approval a proposal for continuing use of the public school facilities by any one or more of defendant religious bodies for such fixed period of time as will enable it or them, with due diligence, to secure adequate alternative accommodations for religious services and religious education.